UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KOLCRAFT ENTERPRISES, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 13 C 4863 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ARTSANA USA, INC. d/b/a CHICCO USA, INC. and ARTSANA, S.p.A. d/b/a ARTSANA GROUP, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Kolcraft Enterprises, Inc. ("Kolcraft") filed suit against Defendants Artsana USA, Inc. ("Artsana USA") and Artsana, S.p.A. ("Artsana S.p.A."). Kolcraft alleges that Defendants infringe U.S. Patent No. 8,388,501, entitled "Play Gyms and Methods for Operating the Same," through the manufacture and sale of certain play yard products bearing the Lullaby trademark. Before the Court is Artsana S.p.A.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6). Because Artsana S.p.A. is not subject to general or specific jurisdiction in Illinois, Artsana S.p.A.'s motion [27] is granted.

## BACKGROUND[1]

Artsana S.p.A. is an Italian corporation headquartered in Grandate, Italy. Artsana S.p.A. is known for baby products, including strollers, play yards, and toys, which are marketed under the "Chicco" name. Artsana S.p.A. has numerous subsidiaries, including International Artsana S.A. ("International Artsana"), which is headquartered in Luxembourg. Artsana USA is a

---

[1] In addressing Artsana S.p.A.'s motion to dismiss for lack of personal jurisdiction, the Court is not limited to the pleadings. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Thus, the facts in this section are taken from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Kolcraft's favor. *Id.* at 782–83.

wholly owned and operated subsidiary of International Artsana. International Artsana provided initial investment funding to Artsana USA when it was formed.

Although they are separate companies, these three entities share some officers and directors. Mario Merlo, International Artsana's Director, is a member of Artsana S.p.A.'s Board of Directors. The chief financial officer of Artsana S.p.A., Michele Lerici, is Artsana USA's president and one of its two board members. The other board member, Giovanni Galbiati, is the coordinator of corporate matters for Artsana S.p.A. Both Mr. Lerici and Mr. Galbiati live in Italy, where Artsana USA's annual meetings are conducted. Artsana USA employees also travel to Artsana S.p.A.'s headquarters throughout the year for various meetings.

Nonetheless, corporate formalities are observed. Artsana USA pays its own taxes and files its own financial statements. It maintains its own banking relationships separate and apart from International Artsana and Artsana S.p.A. It has its own employees in the United States who are not also on Artsana S.p.A.'s payroll. At the same time, Artsana S.p.A. does not have a presence in Illinois. It does not pay taxes, own property, or have employees, facilities, bank accounts, telephone listings, or mailing addresses in Illinois. Artsana S.p.A. is not licensed or registered to do business in Illinois, nor does it have a registered agent in Illinois.

Artsana S.p.A. owns twenty-two active trademark registrations for the "Chicco" brand name. It also owns the Lullaby trademark used on the accused play yard products. Artsana USA is the exclusive licensee of the "Chicco" brand name in the United States. It also is Artsana S.p.A.'s distributor and sales representative in the United States and Canada for certain products as set forth in a 2006 sales representative agreement.[2] Pursuant to that agreement, Artsana S.p.A.

---

[2] The parties have not provided the Court with a listing of what the "Products" are. But Artsana S.p.A. has submitted deposition testimony that demonstrates that the accused play yard products, which are designed, manufactured, marketed, and sold independently by Artsana USA, are not governed by the agreement.

is to pay Artsana USA a commission on the net invoiced amount for all sales in the United States and Canada. Artsana USA is also to "[d]iligently and faithfully . . . serve Artsana [S.p.A.] . . . as [its] exclusive distributor and sales representative in the USA and Canada" and to "use its best endeavors to improve the . . . goodwill of Artsana [S.p.A.] . . . in the USA and Canada, to promote and market the Products in the USA and Canada and to seek orders for the Products in the Territory and generally to do such other matters and things to . . . assist Artsana [S.p.A.] . . . in the promotion, distribution, marketing and sale of the Products in the Territory." Ex. E to Resp. § 8.1.1. The agreement provides that Artsana USA is "[n]ot to do anything that may prevent the sale or interfere with the development of the Products inside or outside the USA or Canada or otherwise engage in any conduct which is prejudicial to the business of Artsana [S.p.A.] . . . or the marketing of the Products generally." *Id.* § 8.1.3. Artsana USA agreed to bear various costs, including all the "[c]osts and expenses relating to new and redeveloped Products and packaging of such new and redeveloped Products" and all "[l]egal fees with respect to orders from any Customer in the USA and Canada." *Id.* § 8.1.23. Artsana S.p.A. has the right "to reject any order for the Products received from [Artsana USA] or from a Customer or potential customer of the Products in the USA and/or Canada" for any reason and "[f]rom time to time to extend the range of Products and/or to discontinue any of the same." *Id.* § 9.1. All sales made pursuant to the agreement in the United States and Canada are subject to certain conditions of sale that are subject to change as Artsana S.p.A. may determine in its sole and absolute discretion. *Id.* § 9.3. The agreement provides that Artsana USA "ha[s] no authority whatsoever to execute any agreements or undertakings in the name of or on behalf of Artsana [S.p.A.] . . . or to undertake any obligation in the name of or on behalf of Artsana [S.p.A.] . . . or to make or

give any promises, warranties, guarantees or representations concerning the Products." *Id.* § 9.4.3.

The sales agreement, however, is limited to certain defined products. Artsana USA also has its own product design, research, development, sales, and marketing operations that are performed separately from those of Artsana S.p.A. and International Artsana. Massimiliano Caforio, Artsana S.p.A.'s general counsel and its designated 30(b)(6) witness, testified that the accused play yard products are designed, developed, marketed, and sold autonomously by Artsana USA. Artsana S.p.A. is not involved with nor does it direct the research, design, or development of the accused play yard products. It also does not offer, sell, promote, or advertise the accused products in the United States.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative

evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

In patent cases, the Court applies the law of the Federal Circuit to determine whether personal jurisdiction exists. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). Under Federal Circuit law, personal jurisdiction is appropriate if authorized by Illinois' long-arm statute and consistent with due process. *Id.* Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). To the extent the federal and Illinois constitutional inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart." *Id.* But because no substantive difference has yet been identified, a single due process inquiry suffices. *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013) ("In light of the Seventh Circuit's assessment in [*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715–16 (7th Cir. 2002)] and the absence of post-*Rollins* [*v. Elwood*, 565 N.E.2d 1302, 1315 (Ill. 1990)] guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice."); *Russell v. SNFA*, 987 N.E.2d 778, 785–86, 2013 IL 113909, 370 Ill. Dec. 12 (2013). In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into

court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1984).

Personal jurisdiction comes in two forms: general and specific. General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, --- U.S. ----, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011). Alternatively, the Court has specific jurisdiction when "the defendant purposely direct[s] its activities at residents of the forum" and "the plaintiff's claim arises from or relates to those activities." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

## ANALYSIS

Artsana S.p.A. argues that it is not subject to either general or specific jurisdiction in Illinois. Kolcraft responds, however, that Artsana S.p.A. exerts complete control over Artsana USA, whose contacts with Illinois should be imputed to Artsana S.p.A., thus making Artsana S.p.A. subject to general jurisdiction here. Kolcraft also argues alternatively that Artsana S.p.A. has committed acts of contributory and induced infringement that make it subject to specific jurisdiction in Illinois.

### I. General Jurisdiction

In *Daimler AG v. Bauman*, the Supreme Court recently addressed whether a principal can be subject to general jurisdiction based on its agent's contacts with the forum state. --- U.S. ----, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). In *Daimler*, Argentinian plaintiffs sued Daimler AG, a

German corporation, in the Northern District of California, alleging that Mercedes-Benz Argentina, Daimler AG's subsidiary, collaborated with Argentine state security forces "to kidnap, detain, torture, and kill" certain of its workers. *Id.* at 750–51. The plaintiffs argued that general jurisdiction was proper in California based on the contacts of another Daimler AG subsidiary, Mercedes-Benz USA, which the Court assumed was "at home" in California. *Id.* at 751, 758. Although the Court stated that it "need not pass judgment on invocation of an agency theory in the context of general jurisdiction," the Court held that even assuming that Mercedes-Benz USA was at home in California and that its contacts could be imputed to Daimler AG, "there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760.

"What is clear from *Daimler* is that, for a court to exercise general jurisdiction over a foreign corporation, that corporation itself—not its managing agent or subsidiary or affiliate— must be 'at home' in the forum state." *Air Tropiques, Sprl v. N. & W. Ins. Co.*, No. H-13-1438, 2014 WL 1323046, at *10 (S.D. Tex. Mar. 31, 2014) (citing *Daimler*, 134 S. Ct. at 761). Thus, even assuming that Artsana USA is considered "at home" in Illinois, its contacts are irrelevant in determining whether Artsana S.p.A. is subject to general jurisdiction in Illinois. *Id.*; *see also Associated Energy Grp., LLC v. Air Cargo Germany GMBH*, --- F. Supp. 2d ----, 2014 WL 2534909, at *4 (S.D. Tex. June 4, 2014) ("*Daimler* makes clear that a foreign corporation will not be subject to general jurisdiction simply by virtue of having an in-state subsidiary or affiliate."). Without Artsana USA's contacts, Kolcraft does not even argue that Artsana S.p.A. has such "continuous and systematic" contacts as to render it "at home" in Illinois. *Goodyear*, 131 S. Ct. at 2851. Thus, the Court does not have general jurisdiction over Artsana S.p.A.

**II.     Specific Jurisdiction**

Although *Daimler* forecloses the use of an agent's contacts to create general jurisdiction over the parent where the parent's contacts with the forum state are insufficient to render it "at home" there, *Daimler* specifically recognized the relevance of an agent's or subsidiary's contacts to the determination of specific jurisdiction. *See Daimler*, 134 S. Ct. at 759 n.13 ("Agency relationships . . . may be relevant to the existence of *specific* jurisdiction."). For example, the Supreme Court noted that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," thus subjecting the corporation to suit in that forum on related claims. *Id.*

Illinois allows one corporation's contacts to be imputed to a corporate affiliate for jurisdictional purposes if a parent company exerts substantial control over the subsidiary or there are grounds for piercing the corporate veil. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940, 943 (7th Cir. 2000); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) ("Imputation, however, requires an unusually high degree of control or that the subsidiary's corporate existence is simply a formality." (citation omitted) (internal quotation marks omitted)). To pierce the corporate veil, Illinois courts require a showing that the subsidiary "is so controlled, and its affairs so conducted by a parent that observance of the fiction of separate entities would sanction a fraud or promote injustice." *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 904 N.E.2d 1050, 1061, 389 Ill. App. 3d 58, 328 Ill. Dec. 540 (2009). Kolcraft has not made any showing of fraud or injustice here. Therefore, the Court will only consider whether Artsana S.p.A. exerts substantial control over Artsana USA with respect to the play yard products at issue so as to render Artsana S.p.A. subject to this Court's jurisdiction. *See Zimmerman v. JWCF, LP*, No. 10-cv-7426, 2011 WL

8

4501412, at *11 (N.D. Ill. Sept. 28, 2011) (examining whether parent was involved with subsidiary's pay policies that were at issue in the case).

Under the substantial control test, it is not enough that Artsana S.p.A. control, direct, and supervise Artsana USA to some extent. *See Alderson v. Southern Co.*, 747 N.E.2d 926, 944, 321 Ill. App. 3d 832, 254 Ill. Dec. 514 (2001) ("Parents of wholly-owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent. If, however, the subsidiary is conducting its own business, then an Illinois court may not assert *in personam* jurisdiction over the parent simply because it is the parent."). Instead, the "critical question is whether the . . . subsidiary exists for no purpose other than conducting the business of its parent." *Old Orchard*, 904 N.E.2d at 1059.

Kolcraft seizes on the fact that Artsana S.p.A. essentially owns all the shares of Artsana USA, albeit through International Artsana. But "corporate ownership alone is not sufficient for personal jurisdiction." *Reimer Express World Corp.*, 230 F.3d at 943. Similarly, the fact that Artsana USA's board members are Artsana S.p.A. employees is just one factor in the analysis and does not automatically establish substantial control. *See United States v. Bestfoods*, 524 U.S. 51, 62, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) (duplication of some or all of directors or executive officers between parent and subsidiary is not fatal to maintaining separate corporate status); *Old Orchard*, 904 N.E.2d at 1059 ("The existence of common officers of both the parent and the subsidiary, without more, is also not sufficient to permit such an exercise of personal jurisdiction."). And while Artsana USA received its initial funding from International Artsana, this again is not considered determinative. *See Old Orchard*, 904 N.E.2d at 1060 (initial funding by parent of subsidiary, even when combined with other factors, was not determinative of substantial control). Other factors show Artsana USA conducting its own business, including the

fact that Artsana USA's employees are not on Artsana S.p.A.'s payroll as well. Artsana USA maintains its own corporate records, files its own tax returns and financial statements, and has its own banking arrangements, all suggesting that its operation is not so intertwined with that of Artsana S.p.A. that its existence is a mere fiction.

Kolcraft also focuses on the sales agreement between Artsana S.p.A. and Artsana USA as evidence that Artsana S.p.A. controls Artsana USA's activities. Under that agreement, Artsana S.p.A.'s and Artsana USA's rights and duties are defined with respect to certain products that bear the Chicco trademark. The evidence before the Court, however, demonstrates that the accused play yard products do not fall under the sales agreement. The accused products are developed independently by Artsana USA specifically for the United States market, with Artsana USA coordinating the design, manufacture, marketing, and sales of these products. Artsana S.p.A. is not involved with the accused products. Thus, for purposes of specific jurisdiction, the sales agreement actually weighs against imputation, for it demonstrates that Artsana S.p.A.'s alleged control is limited to certain products not at issue in this case.

Finally, Kolcraft argues that Artsana S.p.A.'s control over Artsana USA is evidenced by Artsana S.p.A.'s ownership of the Chicco and Lullaby trademarks. "The mere existence of a licensor-licensee relationship, without more, is 'insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction.'" *Eco Pro Painting, LLC v. Sherwin–Williams Co.*, 807 F. Supp. 2d 732, 736–37 (N.D. Ill. 2011) (quoting *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 n.8 (E.D. La. 2010)). Jurisdiction may be found over the licensor where the licensor exercises control over the licensee's sales activities and regulates its operations. *See id.*; *Meta/Balance, Inc. v. Health Ventures Partners*, No. 03 C 50497, 2004 WL 1345097, at *2 (N.D. Ill. June 14, 2004) (jurisdiction not conferred over

licensor where it "retained little or no control over how [the mark] was used" and did not have the ability to regulate the licensee's operations or sales activities). Here, as discussed above, the evidence demonstrates that Artsana S.p.A. does not exercise control over Artsana USA's sales activities or operations related to the accused products, which are left to Artsana USA's discretion. Although Artsana S.p.A. may monitor the quality of the products sold by Artsana USA bearing Artsana S.p.A.'s trademarks, such monitoring is also insufficient to confer jurisdiction over Artsana S.p.A. *Eco Pro Painting, LLC*, 807 F. Supp. 2d at 737 (citing *Sunshine Kids Found. v. Sunshine Kids Juvenile Prods., Inc.*, No. H-09-2496, 2009 WL 5170215 (S.D. Tex. Dec. 18, 2009)).

Having considered the relationship between Artsana S.p.A. and Artsana USA with respect to the accused products, the Court finds that Artsana USA's contacts should not be imputed to Artsana S.p.A. for purposes of specific jurisdiction. Although the record reveals that there are interlocking directorships, that Artsana S.p.A. provided initial funding to Artsana USA through International Artsana, and that Artsana USA uses Artsana S.p.A.'s trademarks on the accused products, this is insufficient to establish that Artsana S.p.A. substantially controls Artsana USA with respect to the play yard products at issue. *See Old Orchard*, 904 N.E.2d at 1060 (specific jurisdiction not found over parent even where record showed that parent and subsidiaries "filed consolidated tax returns and had the same officers and directors," that parent "procured the initial funding" for the subsidiaries, and parent "controlled the flow of cash between itself and its subsidiaries, as "[p]arent corporations necessarily direct and control some aspects of their subsidiaries' businesses"); *Zimmerman*, 2011 WL 4501412, at *11 (N.D. Ill. Sept. 28, 2011) (despite parent having some administrative involvement with subsidiary, finding "no evidence from which the Court could conclude that [the parent] had any involvement with,

11

let alone exercised . . . 'an unusually high degree of' control over, [its subsidiary's] pay policies at issue in this case"). The evidence before the Court shows that Artsana USA has an existence of its own, particularly with respect to the accused products at issue that are developed for the United States market. Artsana USA is not just a legal fiction set up by Artsana S.p.A. to shield itself from lawsuits related to the accused products. *See Old Orchard*, 904 N.E.2d at 1060 ("The determinative question is whether the parent corporation is simply attempting to shield itself from lawsuits by conducting its own business through the legal fiction of 'separate' subsidiaries and distribution networks."). Thus, Artsana USA's contacts will not be imputed to Artsana S.p.A. for the purpose of establishing specific jurisdiction.

But Kolcraft argues that Artsana S.p.A.'s independent actions subject it to specific jurisdiction here, because Artsana S.p.A. does business within Illinois and Artsana S.p.A. has committed tortious acts within Illinois. Neither of these allegations hold up against Artsana S.p.A.'s unrebutted evidence that the accused play yard products are independently designed, manufactured, marketed, and sold by Artsana USA. A defendant can be liable for patent infringement "by inducing or contributing to another's infringement occurring in the United States by supplying such other person with the instruments for committing the infringement, providing the defendant knew or should have known that the other would or could reasonably be expected to commit the infringement." *Zimnicki v. Gen. Foam Plastics Corp.*, No. 09 C 2132, 2010 WL 3941869, at *5 (N.D. Ill. Oct. 4, 2010) (citation omitted) (internal quotation marks omitted). Even if the injury occurred in Illinois, where Kolcraft is based and the accused products have been sold, Kolcraft has not adduced any evidence to rebut Artsana S.p.A.'s evidence that Artsana USA has complete control over the accused products. In the face of this evidence and in light of the fact that the parties engaged in jurisdictional discovery, Kolcraft's

conclusory allegations of inducement are insufficient. *See Purdue*, 338 F.3d at 783 (where the defendant submits evidence to oppose jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence to support the exercise of jurisdiction).

Thus, the Court does not have jurisdiction over Artsana S.p.A., which is dismissed from the suit.[3] Kolcraft is not left without recourse, however, as it has also sued Artsana USA in the same complaint. Indeed, Kolcraft and Artsana USA have already engaged in some discovery and exchanged initial infringement and invalidity contentions. As already discussed, there has been no suggestion that Artsana USA is insolvent or that dismissal of Artsana S.p.A. would work an injustice upon Kolcraft. The dismissal of Artsana S.p.A. should not affect Kolcraft's ability to prosecute this action against Artsana USA.[4]

## CONCLUSION

For the foregoing reasons, Artsana S.p.A.'s motion to dismiss [27] is granted. Artsana S.p.A. is dismissed from this case.

Dated: August 6, 2014

SARA L. ELLIS
United States District Judge

---

[3] Having found no jurisdiction over Artsana S.p.A., the Court need not address Artsana S.p.A.'s argument that dismissal is also proper under Rule 12(b)(6).

[4] The Court notes that Kolcraft has been prosecuting a similar patent infringement action related to the same accused Lullaby products solely against Artsana USA (previously known as Chicco USA, Inc.) in this District since 2009 without attempting to join Artsana S.p.A. *See Kolcraft Enters., Inc. v. Chicco USA, Inc.*, No. 09 C 3339 (N.D. Ill. filed June 3, 2009).