UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KOLCRAFT ENTERPRISES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 4863 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ARTSANA USA, INC. d/b/a CHICCO USA, INC. | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kolcraft Enterprises Inc. ("Kolcraft") filed this case against Artsana USA, Inc. ("Artsana") alleging patent infringement in violation of Title 35 of the United States Code. The parties now seek construction of various terms in the claims of the subject patent, U.S. Patent No. 8,388,501 B2 (the "'501 patent"), which describes "Play Gyms and Methods for Operating the Same." The construction of the disputed claims and the Court's analysis is stated below.

## LEGAL STANDARD

"Judicial 'construction' of patent claims aims to state the boundaries of the patented subject matter, not to change that which was invented." *Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015). Not all claims require construction, only those in dispute and only to the extent necessary to resolve the dispute. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

Claims construction analysis begins with the intrinsic evidence which "includ[es] the claims themselves, the specification, and the prosecution history of the patent." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013) (citations omitted). The Court first reviews the language of the claims themselves, applying a "heavy

presumption that claim terms take on their ordinary meaning as viewed by one of ordinary skill in the art." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (citations and quotations omitted). The presumption of ordinary meaning prevails in all but two situations: (1) "when a patentee acts as his own lexicographer" or (2) "when the patentee disavows the full scope of the claim term in the specification or during prosecution." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) (citations omitted).

If analysis of the intrinsic record resolves the ambiguity of a disputed term, "it is improper to rely on extrinsic evidence," which includes dictionary definitions, expert testimony, and other "evidence that is external to the patent and file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583–84 (Fed. Cir. 1996). The Court may consider extrinsic evidence to ensure that the Court's construction of a claim "is not inconsistent with clearly expressed, plainly apposite and widely held understandings in the pertinent technical field." *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1346 (Fed. Cir. 2003). But it "may not be used to vary or contradict the claim language or the import of other parts of the specification." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358 (Fed. Cir. 2003) (citation and quotations omitted).

While claims must be construed in light of the specification, limitations from the preferred embodiments or specific examples in the specification typically cannot be read into the claims. *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) ("This court has repeatedly stated that while claims are to be construed in light of the specification, they are not necessarily limited by the specification.") (citing *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995)). Thus, while the specification may be used to aid in the

interpretation of the claims, it may not be used as a source for adding extraneous limitations. *Rexnord Corp.* v. *Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001)

Finally, if a claim describes a function without describing adequate structure for accomplishing that function, the claim falls under 35 U.S.C. § 112, ¶ 6[1] and is a "mean-plus-function" claim. In such a case, the structure for performing the function is limited to a corresponding structure appearing in the specification. *See Northrop Grumman Corp. v. Intel Corp.,* 325 F.3d 1346, 1350 (Fed. Cir. 2003). There is a presumption that if a claim includes the word "means" it is a means-plus-function claim and a converse presumption that if it does not include that word, it is not a means-plus-function claim. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–1348 (Fed. Cir. 2015) (en banc). The presumption can be overcome, however, if "person of ordinary skill in the art [understands the claim] to have a sufficiently definite meaning as the name for structure." *Id.* When construing means-plus-function claims, a court first defines the particular function claimed then identifies the structure to perform that function in the specification. *See JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005).

## ANALYSIS

### A. "Connector" or "Connectors" in Claims 7, 11, 13, and 14

The first disputed claim is the term "connector" or "connectors" as used in Claims 7, 11, 13, and 14. The relevant portions of the disputed claims are as follows:

---

[1] Congress amended 35 U.S.C. § 112 when it passed the Leahy–Smith America Invents Act ("AIA"), and the amendments took effect on September 16, 2012. Pub. L. No. 112–29, § 4 125 Stat. 284, 296–97 (2011). Because the application resulting in the '501 patent was filed on August 20, 2012, before the effective date of the AIA, the Court refers to the pre-AIA version of § 112. The AIA did not make any substantive change to § 112; therefore, the analysis is identical under both versions.

3

> **Claim 7**[2]: "the floor mat having a connector positioned in proximity to a perimeter edge of the floor mat," "the play gym having a fastener to engage the connector of the floor mat to couple the play gym to the floor mat," "the connector of the floor mat is positioned on an underside of the floor mat," and "the connector is pivotally coupled to the underside of the floor mat."
>
> **Claim 11**[3]: "a second plurality of connectors provided on the second surface of the floor mat adjacent the first plurality of connectors," "the play gym having a plurality of fasteners, the fasteners to couple to respective ones of the second connectors when the play gym is coupled to the floor mat"
>
> **Claim 13**: "a second plurality of connectors provided on the second surface of the floor mat adjacent the first plurality of connectors;" "the play gym having a plurality of fasteners, the fasteners to couple to respective ones of the second connectors when the play gym is coupled to the floor mat," and "the second plurality of connectors is pivotally coupled to the second surface of the floor mat."
>
> **Claim 14**: "the floor mat defining an upper surface and a bottom surface, the bottom surface having a first connector that includes an opening to receive the fastener of the leg when the play gym is coupled to the floor mat"

Artsana argues that the Court should construe the term "connector(s)" in these claims as "pivoting connector(s)," because in each of these claims the connectors are described as being located on the bottom or "second surface" of the floor mat, and the specification states in one example that the connectors must be pivoted "in to their first positions so that they do not interfere with positioning the connectors within the bassinet or the play yard." (JA-000015, col. 6, lns. 35–39 (part number omitted). Artsana argues that any non-pivoting connectors must be located on the top side of the mat and within the perimeter.

---

[2] Claim 7 depends on Claim 6 and Claim 1. All references to Claim 7 include the subject matter of Claims 1, 6, and 7.

[3] Claims 11 and 13 depend on Claim 9 and include the subject matter of Claim 9.

4

Kolcraft counters that the specification actually contemplates fixed connectors, which may be located on the bottom side of the floor mat. The specification states, "Alternatively, the connectors may not be pivoted to the mat and/or the connectors may be located within the perimeter of the mat to permit coupling of the play gym to the mat when the mat is located within the bassinet and/or play yard." JA-00015, col 6. lns. 48–52.

Although the specification seems to strongly favor the use of pivoting connectors to avoid interference with the bassinet or play yard when the floor mat is placed inside either, the Court cannot import the requirement that the connection of the floor mat to the play yard or bassinet be totally without interference. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995) ("[A] patent claim is not necessarily limited to a preferred embodiment disclosed in the patent."). The use of pivoting connectors may be a preferred embodiment in the specification, but the claims do not require it. Furthermore, where the claims require the connectors to pivot, they are described as pivotally coupled. *See* Claim 7 and Claim 13. Therefore, the terms "connector" and "connectors" do not require further construction.

### B. "Connector" and in Claims 7 and 15

Artsana argues that "connector" as used in Claims 7 and 15 is invalid pursuant to 35 U.S.C. § 112, first paragraph (pre-AIA), because it is not supported by the written description and lacks enablement within the written description. The relevant portions of the disputed claims are as follows:

> **Claim 7:** "the play gym having a fastener to engage the connector of the floor mat to couple the play gym to the floor mat, the floor mat to couple the play gym to the play yard or the bassinet when the play gym is positioned in one of the play yard or the bassinet" and ''the connector is pivotally coupled to the underside of the floor mat."

> **Claim 15:** "the floor mat defining an upper surface and a bottom surface, the bottom surface having a first connector that includes

5

an opening to receive the fastener of the leg when the play gym is coupled to the floor mat" and "the floor mat to couple the play gym to the play yard or the bassinet"

Artsana, as the party asking the Court to find that a claim is invalid, bears the burden of proving lack of enablement by clear and convincing evidence. *See Auto. Tech. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007). The enablement requirement is met "when one skilled in the art, having read the specification, could practice the invention without 'undue experimentation.'" *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (quoting *In re Wands*, 858 F.2d 731, 736–37 (Fed. Cir. 1988)).

Artsana argues that the only instance of the play gym coupling to the play yard or bassinet by way of the floor mat in the specification requires the connectors to be on the top side of the floor mat; therefore, the manner of describing the connection coupling in Claims 7 and 15 lacks enablement in the written specification. JA-00015, col. 5, lns 50-59. This incorrectly states the content of the specification. The cited section does not require the connectors to be on the top of the floor mat; rather, it states that "the mat may include non-pivoting connectors located within the perimeter of the mat and accessible from the top of the mat." *Id.* at lns. 54–56. This language is clearly permissive rather than mandatory as Artsana insists.

However, Artsana is correct that there is no instance in the specification explicitly explaining how the floor mat couples the play gym to the play yard or bassinet. But, taken as a whole, the language of the claim itself and the specification are sufficiently clear to inform one of ordinary skill in the art how to practice the invention without undue experimentation. The specification states how the play gym connects to the floor mat. It also states how the floor mat can couple to the play yard or bassinet. *See* JA-000014, col. 3, lns. 53–58 ("For example, the floor mat 16 may be secured to the bassinet 12 and/or the play yard 14 by Velcro strips. Alternatively, the floor mat 16 may be held in place by gravity without the benefit of

fasteners."). A person of ordinary skill in the art could read the entire patent, and, with little or no experimentation, couple the play gym to the bassinet or play yard by way of the floor mat. Therefore, Claims 7 and 15 are not invalid for lack of enablement.

### C. "To couple" in Claims 7 and 15

Artsana contends that the term "to couple" as used in Claims 7 and 15 is invalid pursuant to 35 U.S.C. § 112, second paragraph, because it is indefinite and does not recite any structure for how the floor mat is to couple. Alternatively, Artsana proposes that if "to couple" is not invalid, it should be construed as "to link, connect, or fasten together." Kolcraft agrees with this proposed construction. The relevant portions of the disputed claims are as follows:

> **Claim 7:** "the floor mat to couple the play gym to the play yard or the bassinet when the play gym is positioned in one of the play yard or the bassinet"
>
> **Claim 15:** "the floor mat to couple the play gym to the play yard or the bassinet"

Indefiniteness must be proven by clear and convincing evidence. *Sonix Tech Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). Where the intrinsic evidence, e.g. the specification, provides guidance on the scope of the claim such that a skilled artisan could with reasonable certainty know what is claimed, the claim is not indefinite. *Id.*

In support of indefiniteness, Artsana argues that the patent does not recite any structure for how the floor mat is to couple with the play yard or bassinet. Kolcraft counters that the specification provides support for how the floor mat couples with the play yard or bassinet. The specification states both that the floor mat can be secured using fasteners, such as Velcro, or simply through gravity. An ordinarily skilled artisan could read the claims and specification and understand what is meant by "to couple" in this context. Therefore, "to couple" is not indefinite.

7

Because the term is not indefinite, the Court adopts the parties' agreed construction and construes "to couple" to mean "to link, connect, or fasten together."

### D. "Fastener" or "fasteners" in Claims 7, 11, and 13.

Artsana argues that the term "fastener(s)" as used in Claims 7, 11, and 13 is not a term generally understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure, and therefore the Court must construe "fastener" in accordance with 35 U.S.C. § 112 ¶ 6 as a means-plus-function claim, limiting the construction of fastener to the specific embodiment found in the specification. Kolcraft argues that "fasteners" has a plain and ordinary meaning as the name for structure and does not require construction. The relevant portions of the disputed claims are as follows:

> **Claim 7:** "the play gym having a fastener to engage the connector of the floor mat to couple the play gym to the floor mat"
>
> **Claims 11 and 13**: "the play gym having a plurality of fasteners, the fasteners to couple to respective ones of the second connectors when the play gym is coupled to the floor mat"

In determining whether or not 35 U.S.C. § 112 ¶ 6 applies to a claim, the Court first must determine whether or not the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. *Williamson*, 792 F.3d at 1348. The fact that a term is defined in terms of its function and does not connote a *precise* physical structure in the minds of those skilled in the art, does not render the term indefinite. It is sufficient that the term convey to one knowledgeable in the art "a variety of structures" known by that term. *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).

Artsana contends that the term "fastener(s)" as used in claims 7, 11, and 13 recite a generic term for a function without any structure because the term "fastener" does not have a

8

generally accepted meaning within the art and fasteners are only identified in terms of their function. In support, Artsana provides a declaration from Jerry Drobinksi, a consultant with substantial experience in the juvenile products industry, and argues that in claims 7, 11, and 13, the word "fastener" could simply be replaced with "means" and the meaning of the claim would be the same. Kolcraft argues that fastener has a sufficiently definite meaning as the name for structure. In support it cites the dictionary, the specification of the '501 patent, the use of "fastener" in patents held by Artsana, and deposition testimony from the former COO of Artsana.

Despite the parties' efforts to direct the Court to numerous sources of extrinsic evidence, the Court can evaluate this claim based on its plain meaning. *See Phillips*, 415 F.3d at 1312–13 (claim terms are given their ordinary and customary meaning to a person of ordinary skill in the art). Where the terms in question are commonly understood words, the meaning may be readily apparent "even to lay judges." *Id.* at 1314. The term "fasteners" is just such a term; it does not require elaborate interpretation or special training to comprehend. A fastener can be many things, but the term conveys a variety of physical structures. Therefore, it does not require additional construction and does not invoke paragraph six.

    **E.**    **"Pivotally coupled" in Claims 7, 13, and 20.**

Artsana argues that the term "pivotally coupled" in Claims 7, 13, and 20 should be construed as "each connector is linked, connected or fastened to the floor mat by a fixed pivot element, such as a shaft or pin, about which the connector turns, rotates, or moves about. A pivotal coupling is different than a coupling that is fixed and/or bendable." Kolcraft asks the Court to construe the term as meaning "linked, connected or fastened together by or as if on a pivot." During the claim construction hearing, Kolcraft agreed with the first sentence of Artsana's proposed construction, but objected to the inclusion of the second sentence "[a] pivotal

coupling is different than a coupling that is fixed and/or bendable." The relevant portions of the disputed claims are as follows:

> **Claim 7:** "the connector is pivotally coupled to the underside of the floor mat"
>
> **Claim 13:** "the second plurality of connectors are pivotally coupled to the second surface of the floor mat"
>
> **Claim 20:** "the second plurality of connectors are pivotally coupled to the second surface of the floor mat"

Because there is no dispute about the first sentence of Artsana's proposed construction, the Court considers only the second sentence. Artsana asserts that Kolcraft has already assented to the inclusion of the second sentence because it included similar language in its proposed construction as part of the Inter Partes Review ("IPR") of the '501 patent. The specific language of this proposed construction states that "Pivotal coupling and pivotal movement resulting from such a coupling differs from that of a fixed coupling and bending movement." JA-000966. The Court agrees that Kolcraft's own words in the IPR serve to limit the claims' construction, but Artsana's construction goes a half-step too far. In the IPR, Kolcraft distinguished "pivoting movement" and "bending movement." Pivoting movement is not the subject of Claims 7, 13, and 20, only the couplings are discussed. Therefore, the Court finds that it is appropriate to apply the limitations to the description of "coupling" from the IPR but not the limitations to the description of "movement."

The Court construes "pivotally coupled" in Claims 7, 13, and 20 as "each connector is linked, connected or fastened to the floor mat by a fixed pivot element, such as a shaft or pin, about which the connector turns, rotates, or moves about. A pivotal coupling is different than a coupling that is fixed."

### F. "First plurality of connector"/"first connector" and "second plurality of connectors"/"second connector" in Claims 11, 13, and 16.

10

Artsana argues that the terms "first plurality of connector" and "first connector" as they appear in Claims 11 and 13 require construction in accordance with 35 U.S.C. § 112, par. 6, and therefore limited to the type of connector specifically mentioned in the specification, namely, Velcro strips. Additionally, Artsana contends that the Court should construe the "second plurality of connectors" and "second connectors" as separate and distinct from the "first plurality of connectors" and "first connector." The relevant portions of the disputed claims are as follows:

> **Claim 11 & 13:** "a first plurality of connectors provided on the second surface of the floor mat, the first plurality of connectors to couple the floor mat to the play yard when the floor mat is positioned in the play yard"
>
> **Claim 16:** "the floor mat . . . having a first connector that includes an opening to receive the fastener of the leg when the play gym is coupled to the floor mat" and "the floor mat comprises a second connector to couple to the play yard or the bassinet"

Artsana argues that "first connector" and "first plurality of connectors" are means-plus-function terms because Claims 11 and 13 recite a function with no supporting structure. As discussed above with respect to "fasteners," the Court can evaluate "connectors" in light of its plain meaning. This term is commonplace and does not require additional construction. Connectors may be many different things, but the term conveys a variety of structures that are called "connectors," and therefore is not subject to 35 U.S.C. § 112, par. 6. *Personalized Media Commc'ns, LLC*, 161 F.3d at 705 (A term is one for structure where one knowledgeable in the art would know a variety of structures by that term).

Artsana also argues the "second plurality of connectors" and "second connectors" must be construed as separate and distinct from the "first plurality of connectors" and "first connector." Kolcraft does not dispute that the sets must be distinct, but argues that the claim does not require that the parts be separate. In support of its argument that the word "separate" should also be included, Artsana cites to *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,

11

616 F.3d 1249, 1254 (Fed. Cir. 2010), which held, "[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Id.* (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). However, Artsana does not explain why the parts must also be separate. The claim language states that the connectors are adjacent to each other, but adjacent does not necessarily mean separate, it can mean near, close, or contiguous. *Adjacent Definition*, Dictionary.com, http://www.dictionary.com/browse/adjacent (last visited October 2, 2017). There is nothing in the claim language requiring the connectors to be separate in addition to distinct, and the Court declines to read such a limitation into the claims. Therefore, the Court construes the "second connector" and "second plurality of connectors" as distinct from the "first connector" and "first plurality of connectors."

### G. "Movably coupled" in Claim 11.

Artsana initially asked the Court to construe "movable coupled" in claim 11 as "each leg of the play gym can be moved relative to the hub while the first end of each leg is linked, connected, or fastened to the hub. 'Movably coupled' is different than a coupling that is 'removably coupled' or fixed and/or bendable." The relevant portion of the disputed claim is as follows:

> **Claim 11:** "the play gym comprises a plurality of legs movably coupled to a hub, each of the legs having a first end coupled to the hub"

At the claim construction hearing, in response to questioning from the Court, Artsana changed its position on the second clause, requesting that the Court replace their suggested construction with "The relationship between the leg and the hub remains constant about the coupling." Kolcraft agreed with including the first clause in the construction of "movably coupled" but continued to object to the second clause as revised.

12

The Court finds that both iterations of the second clause are unnecessary and impermissibly import limitations from the specification into the claim. Artsana argues that every time the specification discusses a part that is "removably" connected to another part, it is shown as capable of being disassociated from that part, and that the descriptions and illustrations of the "movably coupled" connections show the leg and hub are not capable of disassociation. Neither of these arguments is persuasive. The fact that some other parts are described as removably coupled has no bearing on whether or not it is necessary to further limit "movably coupled" to exclude removably coupled. Artsana does not explain why the Court should import this additional limitation into the claim, beyond stating that unrelated components are described as removably coupled and the leg-hub connection is not. This is insufficient to convince the Court that it should so limit the claim.

Artsana's suggestion that the second clause be revised to state, "The relationship between the leg and the hub remains constant about the coupling," seeks to achieve the same limitation through different means, and the Court similarly rejects it. The Court finds that there is no basis in the language of the claim to limit its construction to the single embodiment shown in the specification.

Therefore, the Court construes "movably coupled" as "each leg of the play gym can be moved relative to the hub while the first end of each leg is linked, connected, or fastened to the hub."

### H. "First fastener" in Claim 14

Artsana argues that "first fastener" in Claim 14 requires construction pursuant to 35 U.S.C. § 112 ¶ 6, because fastener is a generic term that is devoid of structure. For the same

reasons stated in Section D above, the Court disagrees. First fastener in Claim 14 does not require further construction.

## I. "Positionable" in Claim 14.

Artsana argues that "positionable" in Claim 14 lacks an ordinary and customary meaning and must be construed, in light of the specification, as "The first end of each leg the play gym can be moved within a range of positions relative to the cavity of the hub while the first end of each leg remains attached to the hub. A coupling that is 'positionable' is different than a coupling that is fixed and/or bendable." The relevant portion of the disputed claim is as follows:

> **Claim 14:** " a first fastener coupled to the first end of the leg to attach the leg to the hub, . . . the first fastener to enable the first end of the leg to be positionable relative to the cavity of the hub"

The word positionable in Claim 14 is perfectly clear in its meaning. A lay judge, and even a jury, can read this claim and understand that a leg that is "positionable" is one that is "able to be positioned." Artsana's proposed construction is unnecessary to clarify this central aspect of "positionable." The additional language Artsana seeks to include is once again an attempt to import limitations into the claims from the specification. Therefore, the claim does not require further construction.

## J. "Play gym" in Claims 7 and 13–20

During the claim construction hearing, the parties agreed in principal that a "play gym" as the term is used in the '501 patent, should be construed as being "a structure or apparatus which is capable of suspending an object over a defined area." This construction is consistent with the specification and how the term is used throughout the patent. Therefore, the Court adopts this construction for "play gym."

**K.** **"Connector of the floor mat is positioned on an underside of the floor mat" in Claim 7, "second plurality of connectors provided on the second surface of the floor mat" in Claims 11 and 13, and "floor mat defining . . . a bottom surface, the bottom surface having a first connector that includes an opening" in Claim 14**

Kolcraft asserts that each of these claims should be constructed to state that the connectors are attached to the underside of the floor mat. Specifically, Kolcraft advocates for the following constructions:

**Claim 7**: "connector of the floor mat is positioned on an underside of the floor mat" should be construed to mean "connector of the floor mat is attached to the underside of the floor mat."
**Claims 11 and 13**: "second plurality of connectors provided on the second surface of the floor mat" should be construed to mean "second plurality of connectors are attached to the second surface of the floor mat."
**Claim 14**: "floor mat defining . . . a bottom surface, the bottom surface having a first connector that includes an opening" (claim 14) should be construed to mean "the first connector, which includes an opening, is attached to the bottom surface of the floor mat."

The current claims clearly state that the connectors are located on the bottom. Kolcraft does not provide any additional justification for why the claims require inclusion of the word "attached" to be properly constructed. Furthermore, during the claim construction hearing Kolcraft agreed that this word was unnecessary. Therefore, the Court declines to further construe these claims.

## CONCLUSION

The Court construes the disputed terms as follows:

| Claim | Disputed Term | Construction |
| --- | --- | --- |
| 7, 11, 13, 14, 15 | "connector"/"connectors" | No construction necessary. |
| 7, 15 | "to couple" | No construction necessary. |
| 7, 11, 13 | "fastener"/"fasteners" | No construction necessary. |
| 7, 13, 20 | "pivotally coupled" | Each connector is linked, connected or fastened to the floor mat by a fixed pivot element, such as a shaft or pin, about which the connector turns, rotates, or moves about. A pivotal coupling is different than a coupling that is fixed. |

15

| | | |
|---|---|---|
| 11, 13, 16 | "first plurality of connectors"/"first connector" and "second plurality of connectors"/"second connectors" | No construction necessary under 35 U.S.C. § 112 ¶ 6.<br><br>The "second plurality of connectors" or "second connector" is distinct from the "first plurality of connectors" or "first connector." |
| 11 | "movably coupled" | Each leg of the play gym can be moved relative to the hub while the first end of each leg is linked, connected or fastened to the hub. |
| 14 | "first fastener" | No construction necessary. |
| 14 | "positionable" | No construction necessary. |
| 7, 11, 13–20 | "play gym" | A structure or apparatus which is capable of suspending an object over a defined area. |
| 7, 11, 13, 14 | "connector of the floor mat is positioned on an underside of the floor mat" (Claim 7)<br><br>"second plurality of connectors provided on the second surface of the floor mat" (Claims 11, 13)<br><br>"floor mat defining . . . a bottom surface, the bottom surface having a first connector that includes an opening" (Claim 14) | No construction necessary. |

Dated: November 14, 2017

_____
SARA L. ELLIS
United States District Judge