UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOLCRAFT ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13 C 4863 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ARTSANA USA, INC. d/b/a CHICCO USA, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Kolcraft Enterprises, Inc. ("Kolcraft") filed suit against Defendant Artsana USA, Inc. ("Artsana USA"). Kolcraft alleges that Artsana infringes U.S. Patent No. 8,388,501 ("the '501 patent), entitled "Play Gyms and Methods for Operating the Same," through the manufacture and sale of certain play yard products bearing the Lullaby trademark. Artsana now seeks summary judgment, arguing that a prior judgment in *Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*, No. 09 C 3339 (N.D. Ill.) ("the '993 patent case"), bars Kolcraft's claims here. Although the judgment in the '993 patent case does not bar all of Kolcraft's claims, the Court concludes that the damages determination in the '993 patent case precludes Kolcraft from relitigating damages if Kolcraft establishes that Artsana has infringed the asserted claims of the '501 patent.

## BACKGROUND[1]

Kolcraft and Artsana produce and manufacture baby products, including play yards, bassinets, and toy gyms. Kolcraft owns the '501 patent, as well as U.S. Patent No. 7,376,993 ("the '993 patent"). The '501 patent issued on March 5, 2013 as a continuation of U.S. Patent No. 8,257,229 ("the '229 patent"), which itself is a continuation of the '993 patent. In a September 26, 2012 non-final office action, the U.S. Patent and Trademark Office ("USPTO") examiner rejected claims 1–20 in Application No. 13/589,777, which matured into the '501 patent "on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1–45 of" the '993 patent because "[a]lthough the conflicting claims are not identical, they are not patentably distinct from each other." Doc. 235 ¶ 17. Kolcraft responded to the USPTO's double patenting rejection by filing a terminal disclaimer in Application No. 13/589,777 on October 31, 2012. Subsequently, as a result of an *inter partes* review, Kolcraft cancelled claims 1–5 and 8 of the '501 patent. Kolcraft also cancelled claims 6, 9, 10, and 12 of the '501 patent during an *ex parte* reexamination control proceeding.

In this case, Kolcraft claims that certain Artsana products—specifically the Chicco Lullaby, Chicco Lullaby LX, and Chicco Lullaby LX/SE Playards (the "Accused Products")—infringe claims 7, 11, and 13–20 of the '501 patent. Claim 7 of the '501 patent, a dependent claim from cancelled claims 1 and 6, includes the following limitations:

> 1. An apparatus comprising:
> 
> at least one of a play yard or a bassinet;

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts, Kolcraft's Statement of Additional Facts, and Artsana's Response. The Court has considered Artsana's objections to the additional statements and has only included in this section facts that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court takes all facts in the light most favorable to Kolcraft, the non-movant.

> a floormat dimensioned to substantially cover a floor of the play yard or the bassinet, the floor mat having a connector positioned in proximity to a perimeter edge of the floor mat, and the floor mat to couple to at least one of the play yard or the bassinet when the floor mat is located within the play yard or the bassinet; and
>
> a play gym to Suspend an object above the floor mat, the play gym having a fastener to engage the connector of the floor mat to couple the play gym to the floor mat, the floor mat to couple the play gym to the play yard or the bassinet when the play gym is positioned in one of the play yard or the bassinet.
>
> 6. The apparatus of claim 1, wherein the connector of the floor mat is positioned on an underside of the floor mat.
>
> 7. The apparatus of claim 6, wherein the connector is pivotally coupled to the underside of the floor mat.

'501 patent, cols. 7–8. Claim 11, which depends on cancelled claim 9, includes the following limitations:

> 9. An apparatus comprising:
>
> a play yard; a floormat positionable on a floor of the play yard, the floor mat having a first surface and a second surface opposite the first surface, the second surface to engage the floor of the play yard when the floor mat is positioned in the play yard;
>
> a first plurality of connectors provided on the second surface of the floor mat, the first plurality of connectors to couple the floor mat to the play yard when the floor mat is positioned in the play yard;
>
> a second plurality of connectors provided on the second surface of the floor mat adjacent the first plurality of connectors; and
>
> a play gym to suspend an object above the floor mat, the play gym having a plurality of fasteners, the fasteners to couple to respective ones of the second connectors when the play gym is coupled to the floor mat, the play gym to extend above the first surface of the floor mat when the play gym is coupled to the floor mat.
>
> 11. The apparatus of claim 9, wherein the play gym comprises a plurality of legs movably coupled to a hub, each of the legs having a first end coupled to the hub and a second end having respective ones of the fasteners.

'501 patent, col. 8. Claim 13 of the '501 patent, also dependent on cancelled claim 9, comprises "[t]he apparatus of claim 9, wherein the second plurality of connectors is pivotally coupled to the second surface of the floor mat." *Id.* Claim 14 of the '501 patent recites:

> 14. An apparatus comprising:
>
> a play gym having a leg coupled to a hub, the hub having a cavity and the leg having a first end and a second end;
>
> a first fastener coupled to the first end of the leg to attach the leg to the hub and a second fastener extending from the second end of the leg, the first fastener to enable the first end of the leg to be positionable relative to the cavity of the hub; and
>
> a floor mat removably couplable to the play gym, the floor mat defining an upper surface and a bottom surface, the bottom surface having a first connector that includes an opening to receive the fastener of the leg when the play gym is coupled to the floor mat.

*Id.* Claims 15–20 of the '501 patent all depend on claim 14.

In the '993 patent case, Kolcraft alleged that the same Accused Products infringe claims 20 and 28–31 of the '993 patent. Claim 20 of the '993 patent, as amended during an *inter partes* reexamination proceeding, recites:

> 20. An apparatus comprising:
>
> a floor mat;
>
> a play gym to suspend an object above the floor mat;
>
> at least one connector to couple the play gym to the floor mat; and
>
> at least one fastener to couple the floor mat to at least one of a play yard and a bassinet, wherein the at least one connector comprises a plurality of connectors, and the play gym comprises:
>
> a hub; and
>
> at least two legs, each of the legs having a first end coupled to the hub and a second end dimensioned to be removably coupled to a respective one of the connectors, wherein the at least two legs are pivotably coupled to the hub,

4

wherein the connectors are pivotably coupled to the mat.

'993 patent *inter partes* reexamination certificate, cols. 2–3. Claims 28–31 of the '993 patent are method claims. Claim 28, on which claims 29–31 depend, recites:

> 28. A method comprising:
>
> securing a play gym at least partially above at least one of a bassinet and a play yard;
>
> removing the play gym from the at least one of the bassinet and the play yard;
>
> securing the play gym to a mat apart from the play gym and the bassinet;
>
> removing the play gym from the mat; and
>
> collapsing the play gym, wherein collapsing the play gym comprises:
>
> pulling a leg of the play gym in a direction away from a hub; and
>
> pivoting the leg into a stored position.

'993 patent, col. 10.

The '993 patent case went to trial. At trial, Kolcraft's president, Thomas N. Koltun, described the '993 patent as comprising a play gym, play yard, bassinet, and play mat. He further testified that Kolcraft was the first company to combine these four items into one product. The jury in the '993 patent case returned a verdict that the Accused Products infringed claims 20 and 28–31 of the '993 patent. The jury awarded Kolcraft $3,245,213.10 in damages, a 7% royalty rate based on $46,360,188 in net sales. The damages covered sales of the Accused Products from May 29, 2008 to March 2016. The court entered judgment on the jury verdict on September 4, 2018. On September 6, 2019, the court denied Artsana's motions for judgment as a matter of law and a new trial and granted Kolcraft's motions for a permanent injunction and prejudgment interest. On September 18, 2019, the court entered an amended judgment for

$4,215,419.04 in damages and prejudgment interest, in addition to post-judgment interest from September 4, 2018 until the date of payment. The parties both filed appeals. Artsana posted an appeal bond, prompting the district court to stay enforcement of the judgment during the pendency of the appeal. The Federal Circuit dismissed Kolcraft's appeal pursuant to Federal Rule of Appellate Procedure 42(b) on October 31, 2019. Artsana's appeal remains pending.

Kolcraft produced damages analyses from its expert, Frank Bernatowicz, in each case. Bernatowicz's reports in both cases do not provide damages figures on a claim-by-claim basis but rather a single reasonable royalty amount. The reports rely on the same net sales of the Accused Products and an August 24, 2009 settlement and license agreement it had entered with Graco Children's Products, Inc. (the "Kolcraft-Graco Settlement and License") to establish the baseline royalty rate. The Kolcraft-Graco Settlement and License settled Kolcraft's claims against Graco, asserted in the '993 patent case, and granted Graco "a nonexclusive license under the Kolcraft patents," defined to include the '993 patent and "any continuations, continuations in part, divisionals, reissues, or reexaminations thereof," to make and sell certain allegedly infringing Graco products.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving

6

party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

**I.**     ***Res Judicata***

First, Artsana argues that *res judicata*, or claim preclusion, bars Kolcraft's claims. In determining whether *res judicata* applies, the Court looks to the Seventh Circuit's general principles on the issue. *Senju Pharmaceutical Co. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). In the Seventh Circuit, *res judicata* requires three elements: "(1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2010). *Res judicata* bars not only claims raised in the first suit but also claims that the plaintiff could have raised in that action. *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006).

Here, the parties are identical to the '993 patent case. Second, the court there entered a final judgment in the '993 patent case. In its response brief, Kolcraft argued that the judgment in the '993 patent case was not final because numerous post-trial motions remained pending. Subsequently, however, the court in the '993 patent case ruled on the remaining pending post-trial motions and, on September 18, 2019, entered a revised judgment that takes into account the

7

disposition of the post-trial motions. Nothing remains for the court in the '993 patent case, underscoring that it "has finished with the case" and rendered a final judgment. *Chase Manhattan Mortg. Corp. v. Moore*, 446 F.3d 725, 726 (7th Cir. 2006); *see also West v. Louisville Gas & Elec. Co.*, 920 F.3d 499, 503 (7th Cir. 2019) ("A final judgment is one that ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment."). And while Artsana's appeal remains pending before the Federal Circuit, this does not affect the finality of the judgment. *See Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) ("[T]he fact that an appeal was lodged does not defeat the finality of the judgment.").

The Court turns then to whether this case involves the same cause of action as the '993 patent case. Because "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases," the Court looks to the Federal Circuit's law on this question. *Senju*, 746 F.3d at 1348. The Federal Circuit follows the Restatement (Second) of Judgments, "which defines a cause of action based on the transactional facts from which it arises." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018). In patent cases, the "essential transactional facts include both the asserted patents and the accused activity," with preclusion found where "the overlap between the transactional facts of the suits is substantial." *Id.* Here, the accused activity is the same because both cases involve the same Accused Products. *See Senju*, 746 F.3d at 1350 ("Because the product in the second action completely overlaps with the product in the first action, there is on that basis no new cause of action.").

As for the asserted patents, the fact that Kolcraft asserts different patents in the two suits is not dispositive. *SimpleAir*, 884 F.3d at 1166. In the case of two suits based on different
8

patents, "a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *Id.* at 1167; *see also Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019) ("Even where different patents are asserted between two suits, claim preclusion bars a patentee from bringing successive suits accusing the defendant's same product of infringing essentially the same patent claims."). Patentably indistinct claims, in other words, ones where "the later claim is obvious over, or anticipated by, the earlier claim," *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001), are considered "essentially the same" for claim preclusion purposes, *SimpleAir*, 884 F.3d at 1167.

Artsana argues that the patent claims asserted in the two cases are essentially the same because they all claim a combination of a floor mat, a play gym, and a play yard or a bassinet. Artsana points to the fact that the '501 patent is a continuation of the '993 patent that shares the same figures and substantially similar specifications and claims. "If claims are supported by the same written description, the probability of overlap between claimed material is higher than if the claims are supported by separate specifications," although common descriptions are not conclusive evidence that the claims are essentially the same. *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1035 (E.D. Tex. 2019). Artsana also points to the terminal disclaimer for the '501 patent, to which Kolcraft agreed after the patent examiner rejected the asserted claims based on nonstatutory obviousness-type double patenting over the claims in the '993 patent. Similar to common specifications, "[a]lthough a terminal disclaimer does not conclusively show that a child patent involves the same cause of action as its parent, the terminal disclaimer is still very relevant to that inquiry." *SimpleAir*, 884 F.3d at 1168 ("[A] terminal

disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent.").

Aside from the terminal disclaimer and common specification, however, Artsana does not provide any analysis as to how the later claims of the '501 patent are "obvious over, or anticipated by, the earlier claim" in the '993 patent, instead only presenting this as an established fact. *Eli Lilly*, 251 F.3d at 968. Admittedly, "[a]n absence of overlap between the later claim and the earlier claim does not preclude a conclusion that the later claim is patentably indistinct from the earlier claim." *Id.* at 968 n.6. But unlike reexamined claims, which are subsets of the original claims, "[a] continuation patent involves the issuance of a new patent altogether, which, importantly, can include *broadened* claims." *Puget Bioventures, LLC v. Biomet Orthopedics LLC*, No. 3:17-CV-502 JD, 2018 WL 2933733, at *4 (N.D. Ind. June 11, 2018). The Court thus must consider whether the scope of the claims materially changed from the '993 patent to the '501 patent. A comparison of the asserted claims in this case against claim 20 of the '993 patent demonstrates that the claims here are broader than those in the '993 patent and so cannot be considered essentially the same for *res judicata* purposes. *See PPS Data*, 404 F. Supp. 3d at 1035 ("[E]ven when multiple claims are addressed towards a single invention, the claims might still be directed towards capturing multiple different *elements* of the same claimed invention. As a result, multiple claims directed towards the same invention may still be distinctive such that they are not capable of being represented by any single claim." (citation omitted)). Artsana's high-level comparison, claiming that all of the claims involve a variation of the combination of a floor mat, a play gym, a play yard, and a bassinet, does not suffice to show that the scope of the claims remained unchanged from the '993 patent to the '501 patent.[2] As set forth in Kolcraft's

---

[2] Similarly, the Court does not find the generalized testimony of Kolcraft's president or its damages expert at the trial in the '993 patent case persuasive evidence that the claims are patentably indistinct.

side-by-side comparison of the language of claim 20 of the '993 patent and the asserted claims of the '501 patent, the '501 patent claims do not include several of the limitations found in claim 20 of the '993 patent. *See* Doc. 243 at 5–6. For example, while claim 20 of the '993 patent describes a play gym with two legs, claims 7, 13, and 14–20 of the '501 patent do not require the play gym to have two legs, with claims 7 and 13 not even requiring any legs. *Compare* '993 patent *inter partes* reexamination certificate, cols. 2–3, *with* '501 patent, cols. 7–10. And, unlike claim 20 of the '993 patent, claims 14, 19, and 20 of the '501 patent do not require a play yard or a bassinet. '501 patent, cols. 8, 10. These do not amount only to "inconsequential textual differences" in describing the same limitations, as Artsana argues. Doc. 234 at 8; *cf. Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1035 (Fed. Cir. 2018) (concluding claims were patentably indistinct where the claims used different language to impose the same limitation). Because Artsana has not shown that this case involves the same causes of action as the '993 patent case, *res judicata* does not apply.

## II. Collateral Estoppel

Alternatively, Artsana argues that collateral estoppel bars Kolcraft from relitigating reasonable royalty damages in this case. For collateral estoppel to apply, Artsana must establish the following elements: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).

---

The Court discusses the similarity in the damages analyses in the two cases in connection with Artsana's collateral estoppel arguments.

The parties only dispute the first element, whether the damages issue in this case is the same as that in the '993 patent case. Artsana argues that the damages analysis in the two cases is the same given that Frank Bernatowicz, Kolcraft's damages expert, based his analyses in both cases on the same legal and factual premises. Indeed, Bernatowicz's opinions in the two cases are substantially similar, with only minor textual differences. As Artsana points out, Bernatowicz reviewed the same documents to analyze the same Accused Products to reach his reasonable royalty calculations for both cases. Moreover, the analyses are not patent-specific. They instead generally consider the sales of the Accused Products during the relevant time periods and assign the same value to the patented features of the Accused Products with respect to both patents. Although the damages in the '993 patent case address a longer time period, those damages include the 2012 to 2016 period involved in this case. *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 633 (D. Del. 2008) ("[T]he same infringing sales of the same infringing products under the '080 patents have already been tried in relation to the '436 patent."). This differentiates the situation from that in *Applied Medical Resources v. U.S. Surgical Corp.*, where the Federal Circuit refused to apply collateral estoppel to the determination of reasonable royalty damages for two different products accused of infringing the same patent where the sales of the products did not overlap and the damages calculations for the two cases depended on different evidence. 435 F.3d 1356, 1361 (Fed. Cir. 2006). Here, because the relevant sales and evidence overlap with those in the '993 patent case, the fact that the relevant infringement may have started on different dates does not matter. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 3:08-cv-714-MO, 2016 WL 3406232, at *8 (D. Or. June 15, 2016) (finding royalty rate from prior case applied where the sales at issue in the two cases overlapped).

Kolcraft maintains, however, that collateral estoppel does not apply because Bernatowicz testified that the '501 patent has value independent of the '993 patent. Kolcraft also argues that Bernatowicz's analysis in this case was specific to the '501 patent, but it points to no evidence to establish that Bernatowicz actually separately considered the '993 patent and '501 patent. But even if the '501 patent has separate value, that separate value is not reflected in Kolcraft's damages analyses. Nothing suggests that Bernatowicz separately factored the value of the '501 patent out of his damages analysis for the '993 patent or vice versa. Bernatowicz's reports instead demonstrate that he considered Artsana's products as a whole and used the same calculations for infringement of both the '501 patent and the '993 patent for the relevant time period. As in *Honeywell*, under Bernatowicz's damages analysis, "as long as the same accused products infringe any of the patents-at-issue in either case, the same [reasonable royalty damages] are recoverable based on the same reasoning." 585 F. Supp. 2d at 632 (collateral estoppel applied where the damages analyses did "not distinguish nor rely on the distinct and separate inventions of the" two patents-at-issue).

Therefore, the Court finds that collateral estoppel precludes Kolcraft from relitigating reasonable royalty damages in this case given the jury's damage award in the '993 patent case. As the court noted in that case, the jury's damages award of $3,245,213.10 equates to a 7% royalty rate on Artsana's sales of the Accused Products. *Kolcraft Enters., Inc v. Chicco USA, Inc.*, No. 09-CV-03339, 2019 WL 4242482, at *3 (N.D. Ill. Sept. 6, 2019). To the extent Kolcraft prevails on its claims, it may not relitigate damages and instead is bound by the

damages found in the '993 patent case for the products Artsana sold during the relevant time period.[3]

However, the application of collateral estoppel does not mean that the Court will take action at this time to preclude Kolcraft from seeking to recover damages in this case. Kolcraft does not appear to contest that it may not obtain a double recovery for infringement of the '993 patent and the '501 patent based on the same sales of the same accused products. But because Kolcraft has not yet collected on the judgment in the '993 case, the Court agrees with Kolcraft that a determination concerning how to address the potential double recovery is premature. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 4467837, at *25 (N.D. Cal. Sept. 9, 2014) (acknowledging that the plaintiff "may only recover one form of damages for each infringing sale, regardless of how many patents [the infringing products] infringe," but declining to eliminate duplicative damages where the plaintiff had not yet received anything for the infringing sales), *overruled on other grounds*, 839 F.3d 1034 (Fed. Cir. 2016).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Artsana's motion for summary judgment [233]. The Court finds that collateral estoppel bars Kolcraft from relitigating reasonable royalty damages in this case.

Dated: March 27, 2020

_____
SARA L. ELLIS
United States District Judge

---

[3] Because the Court concludes that collateral estoppel bars Kolcraft from relitigating reasonable royalty damages in this case, the Court need not address Kolcraft's alternative argument that the Kolcraft-Graco settlement and license cannot inform the baseline reasonable royalty rate.